UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE CHARTER OAK INSURANCE CO., | : | |
| | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 21-19565 |
| v. | : | |
| GREAT NORTHERN INSURANCE CO., | : | |
| Defendant. | : | OPINION |
| | : | |

This subrogation action arises out of an underlying slip and fall incident on September 11, 2018, in the first-floor women's bathroom at 1120 Executive Plaza. Compl. ¶¶ 1, 18. The injured party, Cynthia Zippilli, filed a personal injury lawsuit (the "Zippilli action") in the Superior Court of New Jersey. See Cynthia Zippilli v. Baruch Greenville, LLC, et al., Docket No. CAM-L-1456- 19. Compl. ¶¶ 1, 18; Exhibit A, Second Amended Complaint. Plaintiff, The Charter Oak Insurance Company ("Charter Oak") provided the defense for its insured, 1120 Executive Plaza, LLC ("1120 Executive") in the Zippilli personal injury action. The matter resolved by settlement and Charter Oak made a settlement payment to Zippilli on behalf of its insured, 1120 Executive. Compl. ¶ 19. Now, Charter Oak seeks to recover the defense costs and indemnification payment from Defendant, Great Northern Insurance Company ("Great Northern").

In support of its claim, Charter Oak alleges that coverage for 1120 Executive is available through Great Northern's policy issued to Association Headquarters, Inc.

1

("Association").  Charter Oak's insured, 1120 Executive, leases space at Association, thereby extending 1120 Executive coverage under the Great Northern Policy.

Defendant moves for dismissal on the theory that Charter Oak is a stranger to the Great Northern Policy and lacks standing to bring the claims asserted in its complaint pursuant to Fed. R. Civ. P. 12(b)(1). Defendant also moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because Charter Oak cannot demonstrate that it is entitled to coverage as an insured under the Great Northern Policy because 1120 Executive's sole negligence was the cause of Zippilli's injuries.

Charter Oak does not dispute that 1120 Executive is not a named insured or additional insured under the Great Northern Policy. Charter Oak relies on the terms of its lease agreement with Association to reach the policy, specifically, the "Lessors of Premises" provision. Defendant claims that such reliance is misplaced because 1120 Executive's negligence was the "sole" cause of the underlying injury, which vitiates coverage.  The Great Northern Policy language states that "sole" negligence is a disqualifier and the Policy does not afford insured status to a lessor organization with respect to any damage arising out of the lessor organization's sole negligence. Moreover, the first-floor bathroom, where the injury occurred, is not part of 1120 Executive's space per the lease agreement. Compl. ¶22. For these reasons, Defendant moves for dismissal.

I. <u>Background</u>

A. The Underlying Action

Cynthia Zippilli was allegedly injured on September 11, 2018, as a result of a slip and fall on water in the first-floor women's bathroom at 1120 Executive Plaza. Compl. ¶¶

2

1, 18. She filed a personal injury lawsuit against, *inter alia*, 1120 Executive in the Superior Court of New Jersey. See Cynthia Zippilli v. Baruch Greenville, LLC, et al., Docket No. CAM-L-1456- 19.  Compl. ¶¶ 1, 18; Exhibit A, Second Amended Complaint. The Zippilli action does not name Great Northern's insured, Association, as a defendant nor does it contain any allegations implicating Association. See Exhibit A.  Likewise, 1120 Executive did not assert any claims against Association in its Answer. See Exhibit B, 1120 Executive's Answer.  1120 Executive filed a Third-Party Complaint against another party but did not include claims against Association. See Exhibit C, 1120 Executive's Third- Party Complaint. The matter ultimately settled.[1]

Great Northern alleges that Charter Oak tendered to it on February 22, 2019, July 28, 2021, and again on September 21, 2021, seeking reimbursement of the defense and indemnity costs incurred in its defense of 1120 Executive in the Zippilli action. Exhibit D, Reid & Associates September 21, 2021, Correspondence. Great Norther responded, on October 25, 2021, denying any coverage obligation because the defense costs and indemnity paid by Charter Oak in the Underlying Action arose out of 1120 Executive's "sole" negligence, and therefore, 1120 Executive Plaza did not qualify as an insured under the Great Northern Policy. Exhibit E, Tressler October 25, 2021, Correspondence. Great Northern also denied coverage because the first-floor women's bathroom was not included in the space leased to 1120 Executive pursuant to the Lease Agreement. Id.

---

[1] Although not part of the Complaint, the Court may consider the Second Amended Complaint and the Third-Party Complaint in the Zippilli action. See Winer Family Trust v. Queen, 503 F.3d 319, 328-29 (3d. Cir. 2007); See Radcliff v. Radcliff, CV 20-3669, 2020 WL 7090687 (D.N.J. Dec. 4, 2020) ("[w]hen considering a motion to dismiss, a court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot be questioned." (internal quotations omitted); see also S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 343 (3d. Cir. 2012) (The Court may consider certain extraneous evidence in connection with a Rule 12(b)(1) motion to dismiss.).

B. The Great Northern Insurance Policy

The Great Northern Policy provides general liability insurance for Association, effective from March 1, 2018 to March 1, 2019 and includes coverage for "bodily injury" caused by an "occurrence" that occurs during the policy period. Compl. ¶¶ 11-12; Exhibit A to Compl. 12; Exhibit A to Compl. Pursuant to the "Who is an Insured" section of the Policy, the "Lessors of Premises" section provides:

> Persons or organizations from whom you lease premises are insureds; but they are insureds only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organization is an insured with respect to any:
> ☐ damages arising out of their sole negligence;
> ☐ occurrence that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
> ☐ structural alteration, new construction or demolition operations performed by or on behalf of them.

Compl. ¶ 13; Exhibit A to Compl.

Great Northern argues that the language quoted in the Complaint is abrogated and does not contain the full language of this exclusion. Compl. ¶¶ 13, 25; Exhibit A to Compl. It also provides the Lease Agreement in support of its standing argument.

Brandywine Operating Partnership, L.P. and Association ("Brandywine") leased Suite 200 at 1120 Executive Plaza in Mount Laurel, New Jersey to Association in March,

4

2014. Compl. ¶ 14; Exhibit B to Compl. The Brandywine Lease Agreement[2] contains an indemnification provision under Section 14(a) which provides, in pertinent part:

> Tenant shall defend, indemnify and hold harmless Landlord, Landlord's property manager, if any, and Brandywine Realty Trust and each of Landlord's directors, officers, members, partners, trustees, employees, and agents (collectively, "Landlord Indemnitees") from any and all claims, actions, damages, liabilities, and expenses (including reasonable attorneys' fees) arising from (i) Tenant's breach of this Lease; (ii) any negligence or willful act of Tenant or any Tenant Indemnitees (as hereinafter defined) or Tenant invitees or contractors; and (iii) any acts or omissions occurring at, or the condition, use, or operation of, the Premises, except to the extent arising from Landlord's negligence or willful misconduct[.]

Exhibit B to Compl., Section 14(a).

Great Northern argues 1120 Executive is not an insured under the Great Northern Policy and/or the Brandywine Lease, and lacks standing to maintain the instant action and is not entitled to a defense and indemnity under the Great Northern Policy. Great Northern moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing, and, in the alternative, Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. Standard of Review

Rule 12(b) (1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b) (1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing the elements of

---

[2] In early September, 2016, Brandywine assigned to 1120 Executive ownership of 1120 Executive Plaza, and 1120 Executive thereby assumed all of Brandywine's rights and obligations under the Lease Agreement. Compl. ¶ 17.

standing, and each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Focus v. Allegheny Cnty. Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See U.S. Express Lines, Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2020); Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Under both Rule 12 (b) (1) and 12 (b) (6), the challenge may be either facial or factual. Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir.

6

2015). When considering a facial standing attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. In re Horizon Healthcare Services Inc. Data Breach Litigation, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

Review of claims under Rule 12 (b)(6) are treated similarly. "A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556

---

[3] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

7

U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

A motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (internal citation and quotation omitted; emphasis added).

### III. Discussion

Charter Oak's complaint satisfies the elements of standing because it sufficiently pleads: (i) "'an injury in fact,' or an 'invasion of a legally protected interest' that is 'concrete and particularized'"; (ii) "a 'causal connection between the injury and the conduct complained of'"; and (iii) "a likelihood 'that the injury will be redressed by a favorable decision.'" In re Horizon Healthcare Services Inc. Data Breach Litig., 846 F.3d at 633, quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).

The complaint alleges that Charter Oak tendered to Great Northern and then incurred the litigations costs, including the settlement payment to resolve the Zippilli action on behalf of its insured, 1120 Executive. The seminal question before the Court

is whether Great Northern was required to defend and indemnify Charter Oak as subrogee of 1120 Executive. Compl., ¶¶ 19, 23, 25-28. This question is not only dispositive of the declaratory judgment action before the Court, but also intertwined with the predicate issue of standing. Under the terms of the Brandywine Lease and the Great Northern Policy "Lessors of Premises" subsection, 1120 Executive may qualify coverage for the Zippilli action. See Compl., ¶ 13, 15-16, 25. At this juncture, Charter Oak's complaint withstands Great Northern's challenge on standing grounds.

Charter Oak further alleges other defendants were named in the Zippilli action and some tendered separate settlement payments. Minell Decl., ¶¶ 5-7. The Zippilli lawsuit alleges negligence, jointly, and severally, against 1120 Executive, styled as Baruuch Greenville, LLC, and against Diversified Management South Jersey II, LLC, Quality Facility Solutions, and Edward T. Lincoln. 8-3, Ex. A. The Zippilli Complaint did not allege 1120 Executive's negligence was sole and at least one other defendant, Quality Facility Solutions, tendered a separate settlement payment. Jabbour Cert., Ex. A, Counts One and Two. These facts undermine Great Northern's argument that 1120 Executive does not qualify as an insured because 1120 Executive is solely negligent. Id.; Minell Decl., ¶¶ 5-7. Both facially and factually, the Complaint sets forth a cognizable claim. For these reasons, Great Northern has failed to establish sole liability on 1120 Executive's part at this time. Dismissal pursuant to Rule 12 (b)(6) is denied.

An appropriate Order shall issue.

Dated: February 23, 2023

/s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE